### ELIZABETH SHERBURNE ET AL. *versus* ABRAHAM SHAW.

A memorandum in writing of a contract for the sale of lands, is not a sufficient memorandum within the meaning of the statute of frauds, unless it in some way shews who are the two parties to the contract.

THIS was an action against the defendant for refusing to complete a purchase by him made at auction of certain lands belonging to the plaintiffs.

The cause was tried here on the general issue at February term, 1817, when it appeared in evidence that the premises agreed to be purchased were situated in *Portsmouth,*

Sherburne & al.
vs.
Shaw.

and consisted of a tract of land with a dwelling-house, and four other small lots; that the defendant became the purchaser of all of them: and that deeds duly executed were tendered to him, but refused, and the consideration not paid according to the conditions of sale. The evidence to prove these facts was a paper purporting to be the " articles of sale of the estate of *Jonathan Warner*, deceased." It contained the terms of payment; then a schedule of the property, as divided, with no other description of it than " *Mansion House*, in *Daniel street*," Lot No. 1, No. 2, &c., and against each of these was carried out the name of the purchaser, and the sums stipulated to be given.

To this paper was affixed the signature of the auctioneer, but it no where appeared who were the owners of the land; nor did it appear in evidence on the trial, that the auctioneer possessed any authority in writing from any of the plaintiffs in relation to the sale. Beneath his signature was a memorandum signed by the defendant, in which he engaged to take the property bidden off by him, at the prices and credits before mentioned.

An advertisement in a newspaper was also produced, which described minutely the quantity of land annexed to the house, its quality, the day of the sale, and many other circumstances unnecessary to be enumerated. This likewise had merely the name of the auctioneer affixed to it. It did not state who were the owners of the land; but the auctioneer being sworn, testified that he was verbally employed by one of the plaintiffs to transact the business.

To the admission of this evidence, objections were made at the trial, and it was received for the purpose of trying the action, subject to the future opinion of the court on its admissibility; and a verdict was returned by the jury for the plaintiffs. The defendant moved the court to set aside the verdict and grant a new trial, on the ground that incompetent evidence had been admitted.

*Farrar, Humphreys,* and *J. Smith,* for the plaintiffs.
*Cutts, Pitman,* and *Mason,* for defendant.

WOODBURY, J., delivered the opinion of the court.

In the consideration of this cause, several points were suggested, which we have not found it necessary to settle. The defects of the written testimony, offered to prove the contract itself, and the inadmissibility of oral proof to aid those defects, are so striking, that our subsequent examination has confirmed our impressions at the trial, that all this evidence must be rejected, or we shall violate acknowledged principles, and the repeated decisions of the most respectable courts.

Our statute(1) declares, that " no action shall hereafter be " maintained upon any contract or sale of lands, tenements, " or hereditaments, or any interest in or concerning them, " unless the agreement, upon which such action shall be " brought, or some memorandum thereof, be in writing, and " signed by the parties to be charged therewith, or signed " by some other person thereunto lawfully authorized in " writing."

(1) Statute of Feb. 10, 1791, Sec. 3, N. H. Laws 191.

Requiring the " agreement" to be written, must have been a provision to enable the parties to pursue remedies against each other for a breach of it, without the expense and uncertainty of oral testimony. Unless the writing, then, which may be executed on the occasion, contain sufficient matter to apprise a court of the parties and terms of the contract, the object of the statute is obviously defeated. Indeed, the word " agreement," *ex vi termini*, must include stipulations to be performed, and parties to make those stipulations. We are aware, that it might be deemed severe to require great formality in instruments drawn on occasions so frequent as private sales, and sales at auction ; particularly since the statute permits a " memorandum" of the agreement to suffice. But this " memorandum," however untechnical, must contain the essentials of the contract, or it ceases to be a " memorandum" of those parts of the agreement, which, above all others, the statute must have intended the parties should reduce to writing. *5 East* 19, *Wain* vs. *Walter*, opinion of *Gross, J.*

Sherburne & al.
*vs.*
Shaw.

It may be in the form of mere entries in a book, naming the seller, purchaser, article and price.

*Sug. L. of V.* 77.—1 *Com. C.* 109, 119.—3 *John.* 399, *Bailey et al.* vs. *Ogden.*

It may be a letter, containing the terms of the contract, and disclosing the names of the parties. 3 *Taun.* 169.— *Rob. Frauds*, 105, 106.

Indeed, it may be with a lead pencil in a mere minute-book, if only so explicit as to render intelligible the extent and makers of the contract. 12 *John.* 102, 106, *Merrill et al.* vs. *Clason.* It is the substance and not the form of the instrument which in this case becomes material : and, when produced in evidence, if it can furnish to the jury the essential facts detailed in the declaration, the spirit of the statute justifies its admission. 3 *Atk.* 503.—3 *John.* 419.

But the writings produced on the trial of this action contain no intimation that the contract declared on was made between the present plaintiffs and the defendant. They disclose the name of no person to whom the defendant was liable : of no one who would be entitled to prosecute him for non-performance, or whom he himself could prosecute for a failure to tender such deeds as were stipulated in the articles of sale.

Nor is the least reference made to the owners of the property, unless in the expression, that the estate is said to be what belonged " to *Jonathan Warner*, deceased." But this is a mere description of the premises, and not of the then owners, as the only person named is not one of the plaintiffs, and is said to be "deceased." For aught that appears on the paper, therefore, the owners and vendors might as probably have been any other persons as the plaintiffs.

The sale might have been authorized by administrators of *Warner*, under license, or by his executors under some direction in a will, or by his devisees, or by some purchasers from one of the above persons. The writings produced, neither explicitly nor by reference, designate which of

these supposed persons were parties to the sale. To presume one of them, in preference to another, would be to distinguish where no apparent difference exists : and, indeed, to presume either, would be rather supplying a total omission, than making a selection for what appears on the face of the paper. The signature might, in some cases, remedy this defect in the body of the instrument. But the plaintiffs here did not sign themselves ; and the auctioneer affixed his own name merely, without disclosing that of his employers, and without producing, as our statute requires, any authority in writing from the plaintiffs, to show that they were the persons who directed him to sell and to sign.

The written evidence, then, which hath been offered to prove the contract declared on, as it fails to give any intimation that the plaintiffs were one of the parties to that contract, must in itself be considered radically defective and inadmissible. *4 Bos. & Pul.* 252, *Champion* vs. *Plumer.* *5 Es. C.* 242, *Ad.* 12.—*3 John.* 399, 420.—*1 John. Ch.* 273, *Parkhurst et al.* vs. *Cortland.*—*5 East* 10.—*3 Taunt.* 169, *obiter.*—*13 John.* 300, *Alcul* vs. *Radcliff.*

*Verdict set aside, and a new trial granted.*