### THOMAS W. GOWEN *vs.* SEMAN KLOUS.

In an action for the price of land sold by auction, the declaration alleged that on a certain day the plaintiff, "being one of the heirs of Thomas W. Gowen," owned a parcel of land in Dorchester, being lot No. 13 on a "Plan of fourteen house lots in Dorchester belonging to the estate of the late Thomas W. Gowen," and caused it to be offered at auction with said other lots, and the defendant bought it at the auction for 9½ cents per square foot, and signed a memorandum of his purchase in writing, in which the lot of land mentioned as lot No. 13 was the lot above described. This memorandum was annexed to the declaration; and consisted, first, of a recital that its signers acknowledged themselves "purchasers of Eveline Gowan, guardian, and the heirs of Thomas Gowan, the lot or lots of land situate at the corner of Columbia and Green Streets in Dorchester, belonging to the estate of Thomas Gowan, deceased," and sold at auction, on the day alleged, by an auctioneer named, "viz: the lot or lots of land against which we have recorded our respective names and at the prices recorded by the auctioneer, the said lots being delineated on a plan by L. Briggs and more particularly described in the advertisement hereto appended." Then followed a table with three columns, entitled respectively "No. of lots," "Names of purchasers," and "Price," in which table fourteen lots were entered as having been sold at various prices, Nos. 1 and 2 at respectively "$1670" and "$620," No. 4 at "9½," and No. 13 to the defendant at "9½ cts." And then was appended the advertisement, which described the sale as an "heirs' and guardian's sale" "by order of the probate court and heirs of the late Thomas Gowan," and the property sold by referring to adjoining estates, and ended: "Per order of Eveline Gowan, guardian, &c." *Held,* on demurrer, that lot No. 13 in the table of signatures to the memorandum was sufficiently identified with the lot alleged to have been sold to the defendant; that if, on the evidence at the trial, the plaintiff should appear to be, as alleged, "one of the heirs of Thomas W. Gowen," deceased, the description in the memorandum of the lands sold, as "belonging to the estate of Thomas Gowan, deceased," would contain no material variance; that whether or not the memorandum sufficiently expressed the price for which lot No. 13 was sold might depend on usage, of which evidence would be admissible on the trial, and would remain to be determined on such evidence when introduced; and that, if the plaintiff should prove on the trial that he owned the lot in question, and authorized the guardian and heirs and the auctioneer to sell it, he might maintain the action notwithstanding the statement in the memorandum that the defendant purchased of "Eveline Gowan, guardian, and the heirs of Thomas Gowan," land sold "by order of the probate court and heirs of the late Thomas Gowan," or "per order of Eveline Gowan, guardian, &c."

CONTRACT. Writ dated June 15, 1867. The declaration alleged that on November 12, 1866, the plaintiff was seised in fee simple of a parcel of land in Dorchester, which it described by metes and bounds, (one of its bounds being alleged as on Columbia Street, another as on the estate of William Wales, and

the two others as on lots marked respectively Nos. 12 and 14 on a " Plan of fourteen desirable house lots in Dorchester belonging to the estate of the late Thomas W. Gowen,") " said parcel of land being marked No. 13 " on said plan; that on the day named he caused the lot to be put up at auction, by Samuel A. Walker, his auctioneer and agent, for several sale together with the thirteen other lots delineated on the plan, and subject to conditions of sale, which were recited in full; that " on said day the defendant was the highest bidder therefor, and was declared to be the purchaser thereof for $9\frac{1}{2}$ cents for each square foot of land in said lot, being $570 for the whole lot; " and that on the same day the defendant signed a memorandum of sale, which was annexed to the declaration, and consisted of a recital of the obligations assumed, a table of the number and price of each lot and the name of the purchaser, a copy of the advertisement of the sale, and an exhibit of the conditions of sale. The following is an abstract of this memorandum:

" We, whose names are hereto appended, hereby acknowledge ourselves to be purchasers of Eveline Gowan, guardian, and the heirs of Thomas Gowan, the lot or lots of land situate at the corner of Columbia and Green Streets in Dorchester, belonging to the estate of Thomas Gowan, deceased, and sold at auction by Samuel A. Walker, November 12, 1866, viz: the lot or lots of land against which we have recorded our respective names, and at the prices recorded by the auctioneer, the said lots being delineated on a plan by L. Briggs and more particularly described in the advertisement hereto appended; and we hereby bind ourselves, our heirs and assigns, to comply with the terms and conditions of the sale hereto appended and declared by the aforesaid auctioneer at the time and place of sale."

| No. of Lots. | Names of Purchasers. | Price. |
|---|---|---|
| 1. | S. Klous. | $1670. |
| 2. | S. Klous. | $ 620. |
| 3. | S. Klous. | $9\frac{1}{2}$ cts. |
| 4. | S. Klous. | $9\frac{1}{2}$ |

[All the subsequent entries, for Nos. 5–14, were precisely like those for **either** No. 3 or No. 4, that for No. 13 being as follows:]

| 13. | S. Klous. | $9\frac{1}{2}$ cts. |

The advertisement, which followed next upon the memorandum, was of an "heirs' and guardian's sale of a house, shop and twelve house lots in Dorchester," to be sold on the day named, by Samuel A. Walker, "by order of the probate court and heirs of the late Thomas Gowan," and described the estate for sale as "situate on the corner of Columbia and Green Streets," and "adjoining the greenhouse and nursery of William Wales," and being in the vicinity of other estates named, as well as having convenient and speedy access to a horse railroad and to a particular station of a steam railroad which ran to Boston. The advertisement concluded : " The heirs and guardian having determined to make the mighty West their future home, the whole property will positively be sold without reserve. For plans and further particulars inquire of the auctioneer. Per order of Eveline Gowan, guardian, &c."

The conditions of sale were finally appended to the memorandum, as follows, and did not differ from the allegation thereof in the declaration :

" Conditions of Sale. Ten days will be allowed to examine the title, and the deeds will be delivered as soon as they are executed and received from the West, where a number of the heirs reside. $200 will be required upon the lot on which the house stands, and $100 on each of the remaining house lots, which is to be paid at the time of the sale. One half of the amount of each lot is to be paid in cash on delivery of the deed, and one half will be payable in three years from the day of sale, to be secured by a power of sale mortgage of the premises at six per cent. interest per annum, which is to be paid semiannually, or the purchasers may pay all cash if they so desire."

The declaration further alleged that the plaintiff on November 12, 1866, and for a long time afterwards, " was ready and willing to make to the defendant a good and sufficient deed of the premises, and to receive one half of the purchase money in cash, and one half secured by a mortgage, or to receive all cash therefor, agreeably to the conditions of sale, and on December 3, 1866, and on divers days and times before and after, tendered to the defendant a good and sufficient deed of conveyance of

said land, conveying the same free from all incumbrances, and also prepared a mortgage deed, with power of sale of said premises, for one half of the purchase money, and requested the defendant to execute said mortgage deed, and to pay him the other half of said purchase money, or to pay the purchase money all in cash, as said defendant pleased, but the defendant wholly refused so to do, and wholly refused to take a conveyance of said land or any part thereof, or to pay therefor in any manner whatever;" that then, on March 16, 1867, the plaintiff " again offered said land for sale at public auction, and the same was then and there resold for a much less sum than the price for which it had been sold to the defendant, to wit, for the sum of $300, whereby the plaintiff lost a large sum of money, to wit, $270," and was also put to the expense of $100 for the charges attending the resale, of all which the defendant had notice, and which sums so lost to or expenses so incurred by the plaintiff the defendant was requested but refused to pay.

A second count alleged " that the plaintiff on November 12, 1866, being one of the heirs of Thomas W. Gowen, was seised in fee simple of a certain other parcel of land, being lot No. 13 on a Plan of fourteen desirable house lots in Dorchester, belonging to the estate of the late Thomas W. Gowen, situate in said Dorchester, and, being so seised thereof, on the same day caused the same, with thirteen other house lots delineated on said plan, to be severally offered at auction upon the conditions set forth in the memorandum annexed, and said defendant on said day was the highest bidder for said lot, and purchased the same for 9½ cents a square foot, being $570 for the whole lot, and signed said paper or memorandum, the lot of land mentioned in said paper as lot No. 13 being the lot in this count above described; and the plaintiff was then and for a long time after ready and willing to make the defendant a good and sufficient deed of the premises, and to receive the purchase money agreeably to the conditions of sale; and on December 3, 1866, and before and after, tendered a good and sufficient deed of conveyance of said land, conveying the same free from all incumbrances, and requested the defendant to pay the purchase money, agreeably to

the conditions of sale, but the defendant wholly refused to take a conveyance of said land or any part thereof, or to pay therefor in any manner whatever; whereby the plaintiff was greatly injured, and lost a large sum of money, to wit, $300, by a resale of said land, and by expenses attending the same, and by the value of said land becoming and being less than said amount bid by the defendant, and otherwise."

The defendant demurred to the declaration, and assigned for causes of demurrer, that the contract alleged by the plaintiff was within the statute of frauds, and there was no sufficient memorandum thereof in writing to charge the defendant; that the memorandum annexed to the declaration did not sufficiently describe or identify the land alleged to have been sold to the defendant, or the price for which it was sold, or that the plaintiff was a party to the contract, or who were the other parties thereto; that it did indicate that there were other parties than the plaintiff, but that they were not joined in the action. In the superior court the demurrer was sustained, and judgment ordered for the defendant. The plaintiff appealed.

*W. Gaston & W. S. Leland*, for the defendant.

*C. A. Welch*, for the plaintiff.

GRAY, J. This is an action upon a contract of sale and purchase of land by auction. The defendant objects to the sufficiency of the declaration, and of the written memorandum which is made part thereof, in three particulars: 1st. The description of the premises; 2d. The statement of the price; 3d. The identification of the vendor. But the court is of opinion that neither of the objections is well founded.

1. The property sold is described in the memorandum as " the lot or lots of land, situate at the corner of Columbia and Green Streets in Dorchester, belonging to the estate of Thomas Gowan, deceased," " delineated on a plan by L. Briggs," and further described in the appended advertisement by referring to adjacent estates and to the means of access to the city of Boston. The lot for the price of which this action is brought is identified in the memorandum by its number, written opposite the defendant's signature; and in the declaration as similarly numbered on a " plan of fourteen desirable house lots in Dorchester, belonging

to the estate of the late Thomas W. Gowen." The situation of the lot is thus clearly fixed; and if the plaintiff (as he alleges in one count of his declaration) is one of the heirs of Thomas W. Gowen, deceased, the description in the memorandum of the lands sold as " belonging to the estate of Thomas Gowan, deceased," contains no substantial variance.

2. The price of this lot is stated in the memorandum as " 9½ cts.;" and is alleged in the declaration to have been nine and a half cents for each square foot, being five hundred and seventy dollars for the whole lot. In the memorandum required to take a contract for the sale of lands out of the statute of frauds, the price may be stated in any words or figures which clearly indicate, as applied to the subject, what that price is. If the figures and letters used in this memorandum do in fact, and in the light of a prevailing usage, afford this information, the memorandum is sufficient; and whether they do or do not will be a question upon the evidence, when introduced. *Salmon Falls Manufacturing Co.* v. *Goddard*, 14 How. 446. *Spicer* v. *Cooper*, 1 Q. B. 424, and 1 Gale & Dav. 52.

3. The memorandum declares that the defendant has purchased " of Eveline Gowan, guardian, and the heirs of Thomas Gowan," land sold at auction by Samuel A. Walker " by order of the probate court and heirs of the late Thomas Gowan," or, as repeated towards the close of the memorandum, " per order of Eveline Gowan, guardian, &c." The declaration alleges that the plaintiff owned the lot now in question, and caused it, with the other lots delineated on said plan, to be sold by auction upon the conditions set forth in the memorandum. If he can prove that he owned this lot, and that he authorized the guardian and heirs and the auctioneer to sell it, he may maintain this action. It is no objection to the sufficiency of the memorandum, that the seller therein named is but an agent of the real owner; and on proof of the agency the latter may sue or be sued on the contract made by his agent in his behalf. *Lerned* v. *Johns*, 9 Allen, 419, and cases cited. *Hunter* v. *Giddings*, 97 Mass. 41. *Salmon Falls Manufacturing Co.* v. *Goddard*, 14 How. 446. *Hood* v. *Barrington*, Law Rep. 6 Eq. 218.

*Demurrer overruled.*