ORVIS et al. v. BRITISH AMERICAN COTTON CO.

(Circuit Court of Appeals, Fourth Circuit. May 1, 1917.)

No. 1489.

1. ESTOPPEL ⚖117—EVIDENCE—ADMISSIBILITY—MODIFICATION OF CONTRACT.
Under a contract whereby defendants were to pay drafts by plaintiff for the purchase of cotton for resale in England, $8 a bale was deposited as a margin and was to be held by defendants until they had disposed of the spot cotton and the futures cotton sold to hedge. In an action on the contract, evidence was admitted that, before plaintiff's manager went to England to attend to the delivery of the cotton to purchasers, defendants agreed to credit plaintiff for each lot of cotton delivered with the $8 a bale. *Held,* that this evidence was admissible, since, while there was no additional consideration for the modification of the original agreement, the testimony that plaintiff's manager went to England believing in the promise was sufficient to raise the issue of estoppel.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. § 307.]

2. EVIDENCE ⚖457—PAROL EVIDENCE TO VARY WRITING—MEANING OF LANGUAGE.
Where such contract contained no explicit statement of the grade of cotton called for, but stated that sales of cotton had been made to various persons "on May/June," letters and parol evidence were admissible to show that the word "on" in the quoted expression meant a high and not a low grade of cotton.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2104, 2107, 2108.]

In Error to the District Court of the United States for the Western District of North Carolina, at Greensboro; James E. Boyd, Judge.

Suit by the British American Cotton Company against Charles E. Orvis and others, copartners as Orvis Bros. & Co. Judgment for plaintiff, and defendants bring error. Reversed.

J. S. Duncan, of Greensboro, N. C., and Joseph E. Johnson, of Warsaw, N. C., for plaintiffs in error.

Thomas S. Beall, of Greensboro, N. C. (King & Kimball and R. C. Strudwick, all of Greensboro, N. C., on the brief), for defendant in error.

Before KNAPP and WOODS, Circuit Judges, and DAYTON, District Judge.

WOODS, Circuit Judge. The defendants, Orvis Bros. & Co., cotton brokers in New York, made a contract with the plaintiff, British American Cotton Company, looking to the payment of drafts made by the plaintiff on defendants for the purchase of cotton for shipment to England. Omitting features not involved, the letter from the plaintiff to defendants which expressed the agreement contained this representation, that plaintiff had sold 500 bales of cotton in England:

"I have sold 500 b/c for January shipment as follows: 200 b/c to William Calvert & Sons, Ltd., Preston, England, 93 points on May/June. 100 b/c to William Calvert & Sons, Ltd., Preston, England, 110 points on May/June. 100 b/c to Tootal, Broadhurst & Lee, Bolton, England, 100 points on May/

⚖For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

June. 50 b/c to Tootal, Broadhurst & Lee, Bolton, England, 110 points on May/June. 50 b/c to Copster Mill Co., Ltd., Oldhan, England, 65 points on May/June."

The undertaking of the plaintiff to buy the cotton to fill these contracts, to secure both itself and the defendants by hedging, and to further secure the defendants by margins, was thus expressed:

"This cotton I will buy from reputable shippers in the South, and at once sell contracts against it through you in Liverpool or New York, as I may prefer. I then desire to draw upon you for the full amount of the sale price as described above, with properly certified bill of lading, freight prepaid, and insurance certificate for the value of the cotton plus 10 per cent. attached, having first placed in your hands a margin of $8 per bale in cash."

It was provided that the contract should apply "in all particulars to the 500 bales of cotton above specified as well as to all subsequent transactions." The contract also contained this provision:

"It is understood that these arrangements are revocable at the pleasure of either you or ourselves, upon 20 days' written notice."

The plaintiff, through J. M. Hause, its manager, purchased 800 bales of cotton in the South, and defendants paid drafts, with bills of lading attached, for the price at which plaintiff represented it had sold this cotton in England. The drafts and bills of lading were sent to Parr's Bank, Manchester, defendants' agent in England, where they were to be taken up by payment of the English buyers of the cotton at the prices represented by plaintiff to defendants as the prices at which it had sold. Four hundred bales of the cotton were delivered, and the price advanced by defendants for them was repaid. The plaintiff was unable to dispose of the remaining 400 bales and repay the purchase money to defendants. The defendants afterwards exercised their option to close the contract on 20 days' notice, sold the cotton at considerably less than the amount of the drafts drawn on them for it and expenses, and credited the plaintiff with the net proceeds. The hedging contracts the defendants closed out at a different time for a considerable profit. In the progress of the matter the defendants released $500 of the $6,400 margin of $8 a bale deposited by the plaintiff.

The complaint is to recover $11,739.12 and interest, being the alleged balance due plaintiff on account after crediting plaintiff with the 400 bales of cotton sold by defendants at its alleged true value $31,-341.59, and crediting also the alleged profit of $7,060.75 made by defendants in closing out the futures sold against the spot cotton purchased. The action is not for conversion. On the contrary, the complaint connotes that the defendants exercised their contractual right in undertaking to sell the cotton as pledgees. The defendants alleged in their answer false and fraudulent representations of the plaintiff as to the quality of the cotton, false representation that it had made sales of all the cotton at the prices represented by its drafts, the failure of the plaintiff to deliver and sell on account of the inferior quality of the cotton, and their own inability from the same cause to sell, after diligent efforts, for a greater price than that actually realized. Their claim is that, after allowing credit for the greatest price they could get for the cotton and for $5,834.56 profit on the hedges, the plaintiff

still owes them $5,161.16 balance on the account. For this sum they set up a counterclaim. The verdict was in favor of the plaintiff for $6,400, and the case is brought up on assignments of error in the admission and exclusion of testimony and in the charge of the District Judge.

[1] The case hinges on the question whether the plaintiff or the defendant is responsible for the failure to have the drafts and bills of lading for 400 bales of the cotton taken up in England, and the subsequent sale of the cotton by defendants at much less than the amount of the drafts of the plaintiff which the defendants paid. On this issue the plaintiff was allowed to introduce parol testimony to the effect that, after the execution of the contract and after purchase of the cotton, but before Hause went to Europe to attend to the delivery of the cotton to the supposed purchasers, the defendants agreed in a conversation with Hause to credit plaintiff at Parr's Bank on drafts and bills of lading for each lot of cotton delivered with the $8 a bale paid to defendants as margin at the beginning, and that, if the defendants had not refused to perform their agreement, the plaintiff would have been able to deliver the cotton at a price sufficient to take up the drafts. This testimony tended to modify the original agreement, which contemplated that the defendants should hold the $8 a bale until they had disposed of the spot cotton and the futures sold to hedge, and there was no additional consideration for the alleged promise. Nevertheless, it was competent, since the testimony of Hause that he went to England, believing in the promise, was sufficient to raise the issue of estoppel against the defendants. The objection that a contract so material, not alleged in the original complaint, should not have been brought in by amendment at the trial, to the manifest surprise of the defendants, is not without force. But the decision of the point is unnecessary, since the defendants will have the opportunity to meet the issue at the new trial, which must be ordered on another ground.

[2] On the pivotal point stated, the defendants introduced evidence tending to show that the failure of the plaintiff to deliver the cotton and make payments of the drafts was not due to any refusal on their part to release the $8 a bale margin, but to the fact that the plaintiff had not made contracts of sale upon which it could make delivery, and to the further fact that the cotton was of such inferior grade that there was no market for it at a price approximating that at which the plaintiff had falsely represented to the defendants it had been sold. Bearing, also, on this point of inferior grade, was the evidence to the effect that plaintiff, in buying the cotton, had drawn on defendants for the large profit of $18 or $19 a bale above the cost price. All this testimony was admitted as competent. In further proof that plaintiff's inability to deliver the cotton and pay the drafts was due to its own breach of its contract with the defendants, testimony was offered by the defendants, and excluded by the court, to the effect that the word "on" in such expressions as "100 b/c to William Calvert & Sons, Ltd., Preston, England, 93 points on May/June," meant a high and not a low grade of cotton. This testimony was erroneously excluded. In the absence of an explicit statement in the contract of the grade of cotton called for, parol evidence was admissible of trade terms indicating the

grade. Salmon Falls M. Co. v. Goddard, 14 How. 446, 14 L. Ed. 493; Robinson v. United States, 13 Wall. 363, 20 L. Ed. 653.

The District Judge seems to have taken the view that the written contract covered all the transactions between the parties, and that, as it was apparently silent as to grades of cotton which the plaintiff represented he had sold in England, parol evidence on that subject was inadmissible. No discussion is necessary to show that in the sale of cotton grade is of primary importance. The plaintiff had a right to meet the contention that the contract was silent as to grade by introducing letters and parol evidence showing the grade of cotton intended. Especially is this so, since the plaintiff alleged in its complaint that the cotton was "of the kind and quality in and by said contracts contemplated." The principle is familiar that such evidence does not tend to alter the contract, but to supply that which the parties had in mind, but failed to express, in the instrument. 17 Cyc. 662. The evidence offered on this subject was erroneously excluded.

The assignments of error relating to the exclusion and admission of evidence not particularly discussed, are unimportant, and, we think, not well founded.

The charge was to the effect that the obligation imposed on the pledgees by the contract was to exercise good faith and due diligence in disposing of the spot cotton and to credit the pledgor with the net proceeds of the cotton so handled, and that the plaintiff was entitled to credit for the profit actually realized from the hedges. As bearing on this issue of the amount for which the defendants were accountable as pledgees, the court gave the instruction that the defendants would be required to account for any price the pledgor would have sold the cotton for, but for the failure of the defendants to release the margin deposited, if the defendants agreed to release it in furtherance of the sale, There can be no dispute that these were sound legal propositions.

There was no request to submit to the jury the issue whether the evidence was insufficient to show estoppel by reason of any action of plaintiff in reliance on defendants' alleged promise to release the margin in furtherance of the completion of the alleged sales by the plaintiff.

On the testimony before the court, the charge was not subject to exception.

Reversed.