**TAMPA SHIPBUILDING & ENGINEERING
CO. v. GENERAL CONST. CO.**

No. 5677.

Circuit Court of Appeals, Fifth Circuit.
Sept. 6, 1930.

Rehearing Denied Sept. 27, 1930.

310

W. H. Jackson and H. S. Phillips, both of Tampa, Fla., for appellant.

Robert W. Shackleford, Henry C. Tillman, and John B. Sutton, all of Tampa, Fla., for appellee.

Before BRYAN and FOSTER, Circuit Judges, and SIBLEY, District Judge.

SIBLEY, District Judge.

Upon a suit at law for breach of contract to deliver certain base rock, the appellee recovered judgment against appellant for $28,689.67. A new trial was refused, and this appeal taken. The assignments of error relate to the overruling of demurrers to the declaration, rulings on evidence, and the refusal of a new trial.

The declaration alleged that appellant agreed to sell and appellee to buy "a certain pile of base rock containing approximately 25,000 tons at a price of $1 per cubic yard," which was not delivered, "and plaintiff alleges that it was necessary for it to expend in purchasing said rock to replace the rock covered by the contract with defendant, and which the defendant failed and refused to deliver, the sum of $59,290, thereby damaging the plaintiff in the sum of $29,754.56 as per bill

of particulars hereto attached and made a part of the declaration." The bill of particulars shows $28,904.20 paid out for rock "for 22nd Street Causeway," and $30,385.86 for freight and demurrage, making the total of $59,290.06, offset by contract price of $1 per ton on 29,535.5 tons, and leaving a balance of $29,754.56. The cause of action thus stated is that a particular pile of rock, containing about 25,000 tons was sold and not delivered. The damage would properly be measured by the number of tons actually in the pile, and by the excess over the contract price of the market price for such rock as that was. The declaration makes no allegation as to number of tons actually in the pile, estimated at 25,000 at the time of the contract, and leaves to inference that that bought on the market was the same sort of rock. The bill of particulars indicates that 29,535.5 tons were bought and used in "22nd St. Causeway," a fact really irrelevant to the cause of action above set forth.

There are exhibited, however, as constituting the contract declared on, four letters between the parties, the material parts of which follow: Letter from appellee to appellant dated November 2, 1925: "Order No. 643. * * * This will be your order for base rock for 22nd St. Causeway, the price for same to be $1 per cubic yard as measured in our trucks. We to load same. Rock to be delivered to us at your property between Flagler and Grant. Via our trucks. Terms 30 days. Date wanted: as desired." On November 9, 1925, appellant replied: "This letter acknowledges your order of Nov. 2, No. 643. With regards to rock for General Construction Company I am enclosing copy of the letter which I have written Mr. Kreiss. * * * Hoping that all is clear now," etc. The inclosure to Kreiss shows that certain rock had also been sold to Kreiss, and stipulates to him "that the General Construction Company has priority for the rock needed for 22nd Street Bridge and Causeway." Appellee also wrote appellant under date of November 3d seeking assurance that the rock will not be sold to others until appellee gets "sufficient quantity for the base rock course of 22nd St. Causeway." Appellant replied on November 10th by referring to its letter of November 9th, above quoted from, adding: "I have arranged priority for you with Mr. Kreiss and you kindly see that you get the rock you want." These letters constitute a sufficient memorandum under the statute of frauds. Those signed by the appellant, who is the person sought to be charged, do not contain any of the terms of the contract,

but they refer specifically to the letters of the appellee which do contain them, thereby incorporating them. Appellants letter of November 9th only "acknowledges" instead of "accepting" the order of November 2d, but that acceptance was meant plainly appears from the absolute direction given Kreiss to give the order priority, and from the expression of hope that all is "clear" in concluding the letter of November 9th, and "satisfactory" in that of November 10th. The memorandum required by the statute may thus be supplied by papers explicitly referred to in that signed by the person sought to be charged. Salmon Falls Co. v. Goddard, 14 How. 447, 14 L. Ed. 493; Ryan v. United States, 136 U. S. 68, 10 S. Ct. 913, 34 L. Ed. 447. The contract made by the order of November 2d and its acceptance by the letter of November 9th, is clear and unambiguous. It sells no pile of rock of about 25,000 tons size, and mentions none. It sells sufficient rock for "22nd Street Causeway," at the price and on the terms stated in the order. Under this contract appellant was bound to deliver and appellee to buy what was required for that causeway, whether appellant had it on hand or not. The amount in the pile was immaterial. A contract for one's needs for a particular enterprise is sufficiently definite, and is not unilateral. McCaw Mfg. Co. v. Felder, 115 Ga. 408, 41 S. E. 664; Pittsburgh Plate Glass Co. v. Neuer Glass Co. (C. C. A.) 253 F. 161; Manhattan Oil Co. v. Richardson Lubricating Co. (C. C. A.) 113 F. 923; Williston on Sales (2d Ed.) par. 464. The letters of November 3d and November 10th indicate that the parties intended that the rock would come from a stock on hand, but they hardly suffice to add that term to the agreement. The contract alleged is thus vitally different from that shown by the exhibits.

As to quantity, under a contract for the sale of a pile, the amount actually in the pile sold would be important. Under the contract to sell rock for the causeway, the amount on hand would be immaterial, and the amount necessary for the causeway would control. As to quality, in a sale of a particular pile, it being at hand and capable of inspection, and not being the manufacture or product of the seller, there would be no implied warranty, but caveat emptor would apply. Barnard v. Kellogg, 10 Wall. 383, 19 L. Ed. 987. But, if unascertained rock were sold for a particular use known to the seller, he would be held to furnish rock suitable for that use. See Kellogg Bridge Co. v. Hamilton, 110 U. S. 108, 3 S. Ct. 537, 28 L. Ed. 86;

Dushane v. Benedict, 120 U. S. 630, 7 S. Ct. 696, 30 L. Ed. 810. The exhibits thus contradict the declaration, and there results confusion as to the exact sort of case to be tried, the thing which declarations and demurrers were intended to avoid. Therefore the grounds of demurrer that no valid contract is shown, and that the writings are insufficient under the statute of frauds, were properly overruled. That no time is fixed for delivery is meritless. The expression, "Date wanted—as desired," means "on demand," a usual stipulation in mercantile contracts. The ground that no quantity of rock to be delivered is stated cannot be sustained, for, as above pointed out, two measures in this respect are set forth. This fault of duplicity is reached by the fourth ground that the declaration is "vague, indefinite and uncertain in that it alleges that the defendant agreed to sell and the plaintiff to buy certain rock mentioned in said declaration on November 2nd, 1925, but the exhibits attached to said declaration are inconsistent therewith and contradictory thereto." The inconsistency and contradiction has been pointed out above. This ground of the demurrer ought to have been sustained. The error in overruling it would not necessarily be reversible, if no prejudice resulted to the losing party; but we think it led to embarrassment in the rulings on evidence, and probably surprise in the trial and injustice in the verdict.

The court admitted in evidence the appellee's office copy of the order of November 2, 1925, over the objection that it was not the original, which was unaccounted for. Although the copy was a carbon duplicate, it was not in a legal sense a duplicate original, but only a copy. Duplicates exist only when the two instruments have both been recognized and established by the parties concerned as the evidence of their act, as where the parties to a sale sign a memorandum with carbon copy and each keeps one. In the present case the paper sent to and received by appellant was the original evidence of the communication. It may have been corrected or altered before sending. It alone is the primary evidence of what was communicated. The error in admitting the copy was, however, cured by the testimony of appellant's manager that he did receive the order thus proved.

Error is assigned on the court's refusal to allow proof that the rock which appellant had on hand was unfit for use in the causeway and would have been rejected. The successful argument was that appellant had contracted to sell rock for the causeway, and, if

what it had on hand was not suitable, it was bound to procure and deliver rock that was suitable. The ruling was in line with the contract of the exhibits, treating the order and its acceptance as the full contract proven; but, if the sale were of the whole or a part of a particular pile, open to examination, its real quality would measure the damage, and not that used or usable in the causeway. The vagueness and contradiction of the declaration embarrasses the ruling on this evidence.

It is earnestly urged that the verdict is wrong in that it is based on the failure to deliver 29,500 tons of rock (or cubic yards, which seem to be treated in the evidence as being the same thing) which indeed were used by appellee in the job it had on hand, but only about 7,350 tons went into the Twenty-Second street causeway for which alone appellant was bound to furnish stone under the only contract proven. It appeared clearly by affidavit on the motion for new trial that appellee had a public contract to build a bridge at the foot of Twenty-Second street, in East Tampa, Fla., with the approaches to it over lowland, and also to build about 5½ miles of paved road, some a continuation of Twenty-Second street, and some not, but the whole was known as the "22nd Street Causeway Job," or project, and that appellant's manager was familiar with the project and had seen specifications for it. The manager testified positively, however, that he had no suspicion that anything more than the stone for the causeway proper was involved in the trial until afterwards. On the trial, the president of the appellee testified twenty-one times that the material he was mentioning went into "22nd Street Causeway." A few times "22nd Street Causeway Job" was spoken of. No distinction between the two seems to have been made. The appellant was probably negligent in not preparing more fully on this point of the case, and the new evidence presented hardly demands a new trial as for newly discovered evidence. Nevertheless the contract proven is only for rock for "22nd Street Causeway." That expression alone is used in all the correspondence. The appellee cannot be held beyond the terms of the contract. According to the dictionaries, the word "causeway," in our modern language, means only an elevated roadway over marshy ground, especially the approach to a bridge. This meaning is really acknowledged by all the witnesses on the motion for new trial, who speak of the approaches to the bridge as the "causeway proper." "If a party seeks to make out that certain words in a contract have a different acceptation than their ordinary sense * * * he must prove it * * * by clear, distinct, and irresistible evidence." De Witt v. Berry, 134 U. S. 306, 10 S. Ct. 536, 538, 33 L. Ed. 896. No such issue was made in this trial. Conceding honesty of purpose to appellee's witnesses, they seem to have considered the expression "22nd Street Causeway" as embracing the whole job they were engaged on, while appellant's manager testifies that he thought they meant the causeway as to which he had contracted. He, though aware that they had the roads as a part of their job, may, in making his contract for the causeway rock, have supposed they would buy that for the roads elsewhere. They did actually buy rock for the whole job from six different sellers, at last. Upon the contract as proven, and the facts as now practically conceded, the verdict is far too large. Upon the whole situation, we are of opinion that a new trial ought to be had, and that the erroneous ruling on demurrer cannot be said to have been harmless, but is a sufficient reason in law to reverse the case.

Reversed and remanded for further proceedings not inconsistent with this opinion.