had made a contract with Wolverton and that he was drilling the well.

Thomas' testimony is often contradictory in itself. As to obtaining pipe for the well, he finally testified that it was obtained from Bethlehem Steel Corporation through Service Equipment Company; that he did not know whether the pipe was bought or rented and did not know to whom it was charged, or who paid for it or whether payment was ever made. Both Moore and Templeton testified that the pipe for the well was leased by Thomas and Moore from the Service Equipment Company, of which Templeton was an executive officer. As has been shown, Moore and Templeton testified that they did not agree with Thomas that if he would relinquish his interest they would go ahead with the well and assume the indebtedness. The trial court resolved this contradiction in favor of the testimony of Moore and Templeton.

The substance of Thomas' testimony, therefore, is that on two occasions Templeton gave him and Moore advice about the wells, that Templeton talked with them about obtaining pipe for the second well, and that Templeton was told that they had employed Wolverton to drill the well and that he was drilling it. These facts, and the fact that Templeton was at the well one time when it was being drilled, are evidence of Templeton's interest in the results of the drilling operations. They do not tend to prove that he was acting with Thomas and Moore in directing or controlling the drilling of the well or wells. Bolding v. Camp, Tex.Com.App., 6 S.W.2d 94; Wesner v. Brendel, Tex.Civ.App. 94 S.W. 2d 239.

· The case has been fully developed and the judgment will be rendered that the trial court should have rendered. The judgment of the Court of Civil Appeals is reversed. The judgment of the district court in favor of respondent Wolverton against petitioner Templeton is reversed and judgment is here rendered that respondent Wolverton take nothing by his suit against petitioner Templeton. The judgment of the district court is reformed so as to adjudge that respondent Wolverton have and recover judgment against Leon Thomas and M. B. Moore jointly and severally for the total sum of $19,331, with interest thereon at 6% from January 1, 1942, and all costs of court. In all other respects the judgment of the district court is affirmed.

Opinion adopted by the Supreme Court.

## BLAUGRUND v. GISH.

### No. 4313.

Court of Civil Appeals of Texas. El Paso.
April 2, 1943.

Rehearing Denied June 10, 1943.

Judgment affirmed by Supreme Court, 179 S.W.2d 266.

Kemp, Smith, Goggin & White, of El Paso, for appellant.

Cunningham, Ward & Cunningham, of El Paso, for appellee.

PRICE, Chief Justice.

This is an appeal from the judgment of the 41st District Court, El Paso County, Texas, wherein Elton R. Gish was plaintiff and A. J. Blaugrund, defendant. Plaintiff sought to recover damages alleged to have been caused in a collision between an automobile driven by plaintiff and a truck driven by defendant's employee. The basis of the cause of action alleged was negligence on the part of the driver of defendant's truck. The trial was before the court with a jury, the submission on special issues. On the verdict judgment was rendered in favor of plaintiff in the sum of $3082.88. From this judgment defendant Blaugrund has perfected this appeal.

The parties will be hereinafter referred to in accordance with the designation they bore in the trial court.

Defendant here asserts eight points of error. In these points complaint is made of· the court's refusal of certain issues requested by the defendant, alleged error

in the court's charge, as to misconduct of the jury, improper argument of counsel, and the overruling of his motion for a new trial on the ground of newly discovered evidence.

There is no question raised as to the sufficiency of the pleading, and hence a statement of same is deemed unnecessary.

The collision in question occurred in the intersection of Pierce Avenue with Highway No. 54. Pierce Avenue runs generally east and west, Highway 54 north and south. The eastern terminus of Pierce Avenue is Highway No. 54. Highway 54 is a four-lane road, there being two lines of traffic on each side of the center of such highway. The collision in question occurred on the afternoon of April 30, 1941, at about 1 P.M. Plaintiff was driving north on Highway 54, defendant's truck was proceeding in the same direction in front of plaintiff's car toward Pierce Avenue. The collision occurred at the intersection at or about the time defendant's truck was turned to the left, the driver intending to proceed westerly on that street. The plaintiff was attempting to pursue his northerly course across the intersection.

Plaintiff's version as to how the collision occurred is about as follows: That he was traveling north in the second traffic lane from the east of the road, defendant's truck was some distance in front of him. At a distance of about fifty or seventy-five to one hundred feet he sounded his horn to signal to the truck that he intended to pass to the truck's left in the course he was then pursuing; that defendant's truck was then in traffic lane No. 1 to the east and continued therein without giving any signal that it intended to turn to the left into Pierce Street; that at the time defendant's truck reached Pierce Street it suddenly turned to the left into the pathway of plaintiff's car and the collision occurred, plaintiff suffering damage to his person and to his car.

The version of defendant's driver is about as follows: He was driving the truck north on Highway 54 along traffic lane No. 1; that is, the east traffic lane, when he perceived in his rear-view mirror plaintiff's car about three-fourths of a block to his rear, traveling in traffic lane No. 2; that some distance from the intersection he held out his hand to indicate that he intended to turn to the left there and moved into the second lane of traffic; that on reaching the intersection he attempted to turn to the left; that at or about this time the car driven by plaintiff struck him, the point of impact being somewhat west of the center of the intersection.

The testimony of the driver of defendant's truck is to an extent corroborated by the testimony of a traffic officer who came upon the scene of the collision after same had occurred. He based his testimony partly on the position of skid marks which he took to be those of plaintiff's car.

The case was submitted to the jury on some eighteen special issues. The jury found that defendant's driver, before changing the course of his truck, was negligent in failing to give a plainly visible signal of his intention to turn; such negligence was the proximate cause of the collision; that defendant's driver failed to keep a proper lookout, and that same was the proximate cause of the collision; that the driver of the truck changed the course of same when there was insufficient space for such movement to be made in safety; that in so doing he was guilty of negligence, and that same was the proximate cause of the collision; found that plaintiff did not fail to sound audible and suitable signal before he attempted to pass the truck; found plaintiff did not fail to keep a proper lookout; found that plaintiff did not operate his automobile at a high and excessive rate of speed; found damages to plaintiff's person in the sum of $2,625, and as to damage to his automobile, the sum of $457.88.

Defendant requested in writing three issues submitting to the jury whether plaintiff had his automobile under control at the time or just prior to the collision, and as to whether such failure was negligence, and as to whether same was a proximate cause. In connection with the first issue this explanation was given:

"By the term 'under proper control' is meant that the operator of the motor vehicle, by the means at his command, by the use of ordinary care, could so change the speed or course, or stop if necessary, to avoid the danger of a collision with, or injury to, any person or thing he should, in the exercise of ordinary care, have reasonably anticipated or foreseen might probably come into the pathway of his car."

In his statement a portion of the testimony of the driver of the truck is set

forth. We have heretofore, we think, sufficiently summarized this testimony.

We might further add, in the judgment of the traffic officer the point of the impact of the two vehicles was about the center line of the intersection; that the skid marks leading up to the point of impact were on the left-hand side of the center line the width of a car.

Now, assuming, as we must in the consideration of this question, that all of the testimony of the driver of the truck is the truth, so assuming, there seems no good reason why plaintiff should not have swerved his car to the eastern traffic lane and passed to the right of the truck in safety. If he could have so avoided the accident, he failed to do so. This, we do not think warrants an inference the car was not under proper control; nor do we think the fact that he did not do so is any warrant for the inference that he could not have done so. From the fact that he collided with defendant's truck, it cannot be inferred that he did not have his car under proper control; from the fact that he sought to pass to the left rather than to the right of defendant's truck, we do not think sufficient to raise the issue of proper control. It will be observed that the court did submit to the jury the fact whether plaintiff operated his car at a high and excessive rate of speed. Now, a finding of a high and dangerous rate of speed is not necessarily conclusive of the question as to whether the driver had his car under proper control. Manlove v. Lavelle, Tex. Civ.App., 235 S.W. 324; Austin v. De George, Tex.Civ.App., 55 S.W.2d 585.

However, in our opinion, the rate of speed at which a car is operated may be a constituent element as to whether same was under proper control. For instance, one approaching an intersection at such a rate of speed that it was impossible for him to yield the right of way to one approaching from his right would, we think, be guilty of negligence in two aspects; one, the failure to yield the right of way; another, in failing to maintain proper control over his car. In this latter case, speed would perhaps be the sole constituting element. The car was simply driven so fast that it could not, by slackening its pace or stopping, yield the right of way.

Here, we believe that if the issue of proper control was in the case, the consti-

tuent element was speed. This issue was submitted on behalf of the defendant and found against him. Under T.R.C.P. 279, it is our opinion the court was not in error in refusing the requested issues.

The defendant requested and the court refused Special Issues 4 and 5, which are as follows:

4. "Do you find, from a preponderance of the evidence, that plaintiff, Elton R. Gish, in endeavoring to pass defendant's truck, operated his automobile at such a rate of speed as to endanger the life or limb of any person, or the safety of any property?"

5. "Do you find, from a preponderance of the evidence, that such rate of speed at which plaintiff was operating his automobile, was a proximate cause of the collision?"

These issues were based on the provisions of Art. 790 of the Penal Code of Texas. In the case of West Texas Coaches v. Madi, Tex.Com.App., 26 S.W.2d 199, it is held that the provisions of the article in question are sufficiently specific and definite to establish a rule of civil conduct. But here, again, in our opinion, the issue of high and excessive rate of speed covers substantially the issues defendant sought to have submitted. Now a rate of speed such as to endanger the life or limb of any person or the safety of any property is certainly a high and excessive rate of speed. In our opinion, for all substantial purposes, the statute simply provides that one shall not operate his automobile at a negligent rate of speed,—this reference, of course, to the surrounding circumstances. Again, under Rule 279, we believe the court was justified in refusing the requested issues.

Defendant requested and the court refused Issues Nos. 6 and 7, which were as follows:

6. "Do you find, from a preponderance of the evidence, that the plaintiff, Elton R. Gish, operated his automobile upon his left hand side of the public highway at a time when the left hand side of the public highway was not clear or unobstructed for a distance of at least fifty (50) yards ahead of him?"

7. "Do you find, from a preponderance of the evidence, that the fact that the plaintiff did so, if he did, was a proximate cause of the collision?"

The real, substantial and controlling questions in this case from the plaintiff's standpoint were as follows: Did defendant's driver, without giving any signal of his intention so to do, turn suddenly to the left into the pathway of plaintiff's automobile? Before turning to the left, did he look to see if he could safely do so?

From defendant's standpoint: Did plaintiff fail to keep a proper lookout? Did he fail to sound a warning of his intention to pass to the left of the truck? Was plaintiff operating his car at a dangerous rate of speed?

In our opinion the court's charge submitted clearly and succinctly all the controlling issues in the case from the standpoint of each party. This is all that is required. Rule 279, R.C.P.

The requested and refused issues sought submission as to plaintiff's violation of Art. 801, Vernon's Penal Code. A reasonable construction of that article, as it is involved here, that the road be clear and unobstructed for a distance of fifty yards applies, by the terms of the act, to the left-hand side of the highway. The real purpose, we think, is to prevent accidents in passing. It is peculiarly applicable to one passing a vehicle going in his same direction when another vehicle is or may be approaching from the opposite direction. The word "clear," we think, refers to the view of the driver of the road; "unobstructed," of course, refers to something impeding passage over the left-hand side of the road such as an approaching vehicle.

Defendant's driver testified that he was on the inside lane when he turned the truck to the left; that when he got one-half across lane No. 3; that is, the inside lane for traffic going south, the collision occurred. There is no evidence that the roadway to plaintiff's left was not clear and unobstructed for fifty yards in front until defendant's truck moved therein. Just as it moved therein the collision occurred, according to the testimony of defendant's driver.

■ Art. 801, Penal Code, should be given a reasonable and practical construction. Tarry Warehouse & Storage Company v. Duvall, 131 Tex. 466, 115 S.W.2d 401.

■ Giving the portion of the statute involved such construction, it does not apply to the situation here disclosed by the evidence. There was no error in refusing the issue.

In our opinion the court's explanation in connection with Special Issue No. 16 does not warrant the assessment of double damages. Hence the assignment is overruled. Willis v. Smith, Tex.Civ.App., 120 S.W.2d 899, writ dismissed.

The oft recurring question of misconduct of the jury is present. It appears that while the jury were considering the case, the question of the cost of a future operation was discussed. Further, that one or more of the jurors stated, in substance, that in the event they answered any of the questions 9 to 15 "Yes," it would conflict with their affirmative answers to questions 1 to 8. Issues 1 to 8 submitted plaintiff's theory, 9 to 15 the defendant's theories as to contributory negligence.

There was in evidence before the jury testimony that plaintiff's injuries might possibly necessitate a future operation, the reasonable expense of which would amount to about $500. This element of damages was not submitted to the jury. In the charge it was explained to the jury the elements of damage to be considered, and directed that no other be considered. This evidence was not objected to at the time it was introduced and was not withdrawn from the jury. During the discussion one of the jurors, in effect, stated that a future operation had not been submitted and was not material.

The law applicable to these two assignments is Rule 327, R.C.P. Under this rule, by the terms thereof, to warrant a court granting a new trial on the ground of misconduct of the jury, it is incumbent upon the party complaining to make it to reasonably appear that probable injury resulted to him therefrom. This is a departure from Art. 2234, R.C.S. 1925, in that, under the statute, misconduct shown, a new trial should be granted unless it appeared beyond a reasonable doubt that injury did not result to the complaining party. The change effected by the rule is discussed by the Supreme Court in the cases of Sproles Motor Freight Lines, Inc., v. Long, 140 Tex. 494, 168 S.W.2d 642, and Barrington v. Duncan et al., 140 Tex. 510, 169 S.W.2d 462.

In these two cases are to be found a clear and explicit statement of the law as it existed prior to the enactment of the rule and the change effected by the rule.

Under the statute and under the rule a juror can neither destroy nor sustain his verdict by testimony that proven misconduct did or did not affect his verdict.

A discussion taking place as to the cost of an operation is mostly directly pertinent as to the amount of damages found. The amount found for physical injury was $2,625. Sought was $5,000. The result of proven misconduct is a question of law. By the terms of Rule 327, the trial and reviewing court, to determine the result thereof, should look to the evidence both on the hearing of the motion and the trial of the case and to the record as a whole to determine whether or not injury probably resulted to the complaining party.

The evidence taken on the trial supports the amount found by the verdict. However, this evidence only purported to disclose the nature of the injuries, the pain and suffering incident thereto, and the duration of the effects of such injuries. There was, further, in evidence the nature and violence of the accident, also medical expenses incurred in the treatment of the injuries. Recovery was not sought either for lost time or impaired earning capacity.

Plaintiff and Dr. Louis Breck testified as to the personal injuries. Plaintiff testified as to pain and headache immediately following the collision; that there was no total disability immediately following the accident; that from that date until about November 1, 1941 he had worked at his avocation as a bartender; during this period played golf from time to time; the physical exertion incident following his working and playing golf occasioned pain; he took six treatments from a chiropractor during this period; that on or about November 4, 1941, he became unable to work, and secured Dr. Breck to treat him. Dr. Breck sent him to the hospital, where he remained for nine days under treatment. These treatments were uncomfortable and attended with some pain; plaintiff was unable to work for two weeks; that after he left the hospital he continued to go to Dr. Breck for treatment to the date of the trial; that after the attack on November 1st he had had no severe attack, but had had intermittent pain. Under the advice of Dr. Breck he was still wearing a corset-like belt. It is inferable, we think that up to the date of the trial he was working at his avocation. Likewise he testified to

a sound physical condition prior to the accident.

Dr. Breck testified that he had X-ray photographs of plaintiff's back taken. These disclosed, the doctor testified, a permanent abnormal condition of an intervertebral disk which, in his opinion, resulted from the accident. His opinion was that plaintiff had recovered to the extent that he lacked only twenty-five per cent of full normal capacity for all types of occupation; that in his opinion there would be a complete recovery, and the narrowing of said disk was a permanent condition; further, that there was a possibility that this condition might have serious consequences—might necessitate a serious operation which, with hospital bills, would cost five hundred dollars. The effect of the operation would be to disable the patient for about six months. The X-ray photographs as to which the doctor testified were in evidence. Defendant offered no testimony disputing the correctness of the interpretation of same made by Dr. Breck.

From the evidence we have above summarized we think different conclusions might be drawn as to the nature and extent of plaintiff's injuries and the effects thereof. The damages sought were unliquidated, and incapable of determination with mathematical certainty.

At the hearing of the motion for a new trial four of the jurors testified. All are in agreement that the matter of the future operation was mentioned. The trial court's finding thereon is as follows:

"There was more or less discussion by the jurors prior to arriving at their verdict as to the cost of a future operation."

From the evidence of juror Warren, it may be inferred the discussion was somewhat prolonged; that in considering Question 16, as to damages, one of the jurors made memorandum as to the amount which should be allowed for this element of damage. That the trial court did not give full credence to the evidence of this juror may be inferred from the finding and, we think, from the overruling of the motion.

There was undisputed evidence that the total of the medical bills of the plaintiff actually incurred was $125; or within a few cents of that amount. The amount as to property damage was found upon separately. It is a fair assumption that the jury, as to incurred expenses, found

in accordance with the evidence. This leaves $2,500 for other elements of damage.

Dr. Breck's testimony as to the possible necessity for a future operation was admitted without objection by defendant, as was his statement as to the reasonable cost thereof. No motion was made by defendant to strike out the testimony. An objection to the testimony or a motion to strike would have, no doubt, been sustained. Houston & T. C. Ry. Co. v. Fox, 106 Tex. 317, 166 S.W. 693.

The jury were not advised of the irrelevancy of the testimony. It was before them for all purposes. A mere mention thereof could hardly be considered misconduct. There was no evidence before them as to the reasonable value of the services of any physician other than those of Dr. Breck and his testimony as to the services of a physician who might perform the operation possibly necessary. By the charge the jury was authorized to consider the fair and reasonable value of the services of physicians, etc.

It is true that the trial court directed the jury that they would consider only the elements of damage mentioned in the direction under Issue 16.

It is elementary, we think, that the finding of the trial court as to whether or not misconduct occurred upon disputed evidence is final. The same reasoning supports the proposition that the finding as to the extent improper discussions were indulged in by the jurors under the same circumstances is final, if supported by evidence. The finding here was, there was "more or less discussion," etc., amounting to a finding there was some discussion. That it went to the extent testified to by the juror Warren is negatived by the express finding of the trial court and the action in overruling the motion. We cannot say that it appears from a preponderance of the evidence that probable injury resulted to the defendant from the discussion as to a future operation.

Two of the jurors stated affirmative answers returned to Issues 9 to 15 would conflict with Questions 1 to 8. Further that such a finding would nullify their verdict.

It is elementary that it is improper for jurors to agree upon which party is entitled to a recovery and in pursuance of such agreement to seek to make the findings bring about that result. A verdict so arrived at cannot stand.

However, a verdict containing conflicting material findings should not be received by the court. In such a case the court should call the jury's attention thereto in writing and send them back for further consideration. Rule 295, R.C.P. It would seem logical, therefore, that it would not be improper for a jury to consider and discuss whether or not findings would conflict. In order to do this, it would seem that they must in this respect consider their findings in relation to each other. For a juror to say to his fellow that a finding that an act or omission constitutes the sole proximate cause of an injury conflicts with another finding that another act or omission is a proximate cause, could hardly be misconduct. James A. Dick Co. v. Yanez, Tex.Civ.App., 55 S.W.2d 600, writ refused.

It could hardly be said, we think, that the erroneous statement by a juror that a finding that an act or omission was a proximate cause would conflict with a finding that another act or omission was also a proximate cause, would constitute misconduct. There would be disclosed a misunderstanding of the court's charge or faulty reasoning on the part of the juror.

To our minds, the testimony as to discussion does not compel an inference of misconduct as to the matter complained of by the defendant. It might warrant such an inference, but it also strongly supports a contrary inference.

Here, we think that the matter constituted faulty reasoning rather than misconduct. An issue was raised as to whether same constituted misconduct. We do not feel warranted in disturbing the finding of the trial court thereon.

For the purpose of discussion, let us assume the statement constituted misconduct. Defendant asserts that the testimony amounts to proof that at least one juror was influenced thereby. Under this assignment defendant cites the cases of Biscoe v. Price, Tex.Civ.App., 164 S.W.2d 67, and Southern Traction Co. v. Wilson, Tex.Com.App., 254 S.W. 1104. In the case first cited the case was reversed on the sole ground of misconduct of the jury. In a word, the misconduct was the statement that if the jury answered the second issue "no," it would amount to a hung jury. The verdict would not deter-

mine anything. A juror testified he believed the statement and his agreeing to the verdict as to Issue No. 2, a material issue, was influenced thereby. The Supreme Court has granted a writ of error in the case. 170 S.W.2d 729. If we understand the authoritative holding of the court, on such a matter the juror's testimony in this respect is not entitled to a feather's weight. Sproles Motor Freight Lines, Inc., v. Long, supra, and authorities cited.

In the case of Southern Traction Co. v. Wilson it appears that the disposition of the case was in a measure influenced by the testimony of the jurors as to the effect that the misconduct had on their verdict. This opinion had the express approval of the Supreme Court. Be that as it may, as we understand it, under the recent decisions, the testimony of a juror that he was or was not influenced by misconduct is entitled to no weight in the determination of the issue. Sproles Motor Freight Lines, Inc., v. Long, supra.

Defendant urges reversal on the ground of improper argument. Under the original bill of exceptions it is made to appear that plaintiff's counsel in his closing argument said he (counsel) was familiar with the roads in the locality of the collision, etc. By a stipulation filed under Rule 403, it is made to appear that the language was used as to defendant's driver. In the light of the record and the stipulation augmenting same, that part of the argument is entirely proper. Counsel, however, stated:

"It is an uncommon thing, and I'll bet you have been up against it a lot, for an automobile to be a way over here on the right, and all of a sudden come across that street and turn in front of you, and, mind you, a truck at that, and you know that they hog the roads."

The argument complained of does not seem, by its terms, to be very clear. The statement "a truck at that, and you know that they hog the roads," is assailed as an appeal to the prejudice of the jury.

At the time this argument was made counsel for the defendant went quietly to the judge and objected, without interrupting plaintiff's counsel, on the ground that it was prejudicial and made simply to inflame the jury and was outside the record, and requested the court to instruct the jury not to consider the same. The court overruled the objection,

and defendant duly excepted. As we understand the record, defendant's request that the jury be instructed not to consider the argument was oral and no written request was made to the court to so instruct the jury. The statement about trucks hogging the road should not have been made, and the court, we think, should have instructed the jury not to consider the argument. However, it was a mere passing reference and did in no way harm the defendant. We find no merit in the point.

It is urged that the court abused its discretion in overruling defendant's motion for a new trial based on newly discovered evidence. This case seems to have been tried on February 10, 1942. The term was extended, and the amended and supplemental motions for a new trial seem to have been overruled by the court on October 15, 1942. The supplemental motion sought a new trial on the ground of newly discovered evidence. This evidence was alleged to have been discovered on March 10, 1942 and was that plaintiff, in connection with his induction into the United States Army, had undergone a physical examination and had been accepted for induction into the Army. That in connection with his physical examination X-ray pictures had been taken; that these pictures showed that the joints between the vertebrae in the back in question were normal.

In support of the motion defendant offered a certified copy of a report of the physical examination of plaintiff in connection with his induction in the United States Army. This report purports to be signed by Capt. John D. Peticolas, and to be dated February 3, 1942, at Fort Bliss, Texas; states registrant was carefully examined; that the results of the examination were correctly recorded, and that to the best of his knowledge and belief plaintiff was "mentally and physically qualified for the active military service of the United States." Line numbered 17 of the report as to the physical examination is as follows:

"Results of laboratory examinations, when made, Blood serology is negative. Orthopedic Consultation shows no evidence clinically or roengenologically of pathology or deformity of the bones or joints."

This copy is certified to by Major General Ulio, the Adjutant General of the United States Army.

We think this copy would be admissible on another trial—admissible as an

exception to the hearsay rule. The facts therein stated are unsworn to; are ex parte declarations. Joy v. Joy, Tex.Civ.App., 156 S.W.2d 547, writ denied.

It was admissible as evidence tending to show the physical condition of plaintiff on February 3, 1942. The report fails to show by whom plaintiff was examined. Capt. Peticolas does not certify that he made the examination, or any part thereof, which he reports. He did certify, however, the examination was carefully made. The fact that this testimony is hearsay goes to its weight, we think, however.

The vital part of the report here is as to the opinion of the examiner or examiners. If X-ray photographs were made, as to what they show depends in part on the skill of the person taking same and the efficiency of the instrument used in their taking; further the ability of the person examining same to interpret them correctly. It is not shown that if such photographs were made they still exist, and can be produced on another trial; it is not shown that the testimony of the individual making or interpreting the X-ray would be available at another trial.

Dr. Breck's testimony was largely based on two X-ray photographs that are sent up with this record as original exhibits. If his interpretation of same was incorrect, defendant had the opportunity to dispute same and failed to do so. If the condition shown by the photograph did exist as stated by Dr. Breck, his opinion, if incorrect, that the condition would be permanent, was likewise subject to contradiction by the defendant. It is inferable, too, we think, that these photographs were taken in a laboratory in the City of El Paso, and defendant had every opportunity to investigate how and by whom same were taken. Defendant did not seek to have plaintiff submit to an X-ray examination, but was content to rest upon the evidence introduced.

The matter of granting a new trial on the ground of newly discovered evidence is addressed to the discretion of the trial court. A strong showing must be made to warrant the conclusion that a trial court has abused this discretion. 31 Tex.Jur. p. 90, pars. 80–81.

This evidence went only to the amount of damages. Ham v. Taylor, 22 Tex. 225; Gulf, C. & S. F. Ry. Co. v. Brown, 16 Tex. Civ.App. 93, 40 S.W. 608; Galveston, H. &

S. A. Ry. Co. v. Waldo, Tex.Civ.App., 77 S.W.2d 326, writ dismissed.

No effort is shown to obtain a physical examination of plaintiff before the trial; no evidence that at another trial defendant would be able to obtain the testimony of Captain Peticolas and Captain Jayson; if obtainable, as to what their testimony would be. No evidence that such Army officers, or either of them, had ever discussed with defendant, or any of his agents or attorneys, what they knew as to the physical condition of plaintiff.

We do not believe this unsupported copy of the report of a physical examination, the nature and extent of which is not disclosed, is entitled to great weight. This is especially true when it is opposed by direct, positive and uncontradicted evidence supported by the oath of an unimpeached witness,—evidence, which if untrue, was subject to contradiction by anyone skilled in the interpretation of X-ray photographs.

We find no reversible error, and the case is affirmed.

### On Motion for Rehearing.

Appellant has filed a logical and able motion for rehearing. It is largely devoted to our holding that the trial court did not err in refusing his requested issues one, two and three, relating to whether plaintiff had his automobile under proper control at the time of or just prior to the collision. We still adhere to the views expressed on this point in the original opinion disposing of the case, but out of deference to the earnest and able motion of appellant, will briefly re-state our views on this point.

In Northeast Texas Motor Lines, Inc., v. Hodges, 138 Tex. 280, 158 S.W.2d 487, it is held in effect that speed, under the circumstances, was a constituent element of proper control,—it was speed in relation to stopping in the zone of the clear view under the surrounding circumstances. Within the definition of "proper control," given in this case, one driving an automobile at such a rate of speed that he could not, by the exercise of ordinary care, avoid a collision with a vehicle he might reasonably foresee would come into the pathway of his vehicle, would not have his automobile under proper control. By the same token, his speed would be high and excessive under the surrounding facts and circumstances in evidence. Here, the high and excessive rate of speed was submitted in

relation to the circumstances. In substance it was defined as a rate of speed in excess of which an ordinarily prudent person would drive his automobile under the same or similar circumstances.

We have read and reread the statement of facts and failed to discover any lack of control of plaintiff's vehicle other than in relation to speed. The manner of the collision does not, we think, justify an inference of lack of control on the part of plaintiff. Plaintiff's vehicle did not collide with the rear of defendant's truck. The truck, undisputedly, swerved into the pathway of plaintiff's vehicle.

Furthermore, we think the special issue requested was too general and indefinite. Suppose the issue had been, "Do you find that defendant's employee failed to operate his automobile properly on the occasion in question?" There could be no question, we think, but the formulation of the issue would be too general. This same vice, we think, inheres in the refused issue.

There was filed herein a stipulation by the parties to amend the record. This stipulation is to the effect that plaintiff excepted to the answer containing the general allegation of negligence. Whereupon it was agreed the only grounds of negligence that were relied upon as contributory negligence were the specific grounds as set forth in defendant's cross-action, and that these specific grounds of negligence, and no other grounds of negligence, were relied on as a defense.

In this cross-action the issue of lack of control was plead as follows:

"No. 6. Plaintiff negligently failed to have his automobile under proper control."

Each ground of negligence is alleged to be a proximate cause of the injury. Five other grounds of negligence are specifically pleaded.

It will be observed that the pleading of lack of proper control is most general. However, we do not hold that under the stipulation the defendant was not entitled to rely thereon. But, regardless of this, we still think the issue was not requested in proper form, hence it was not error for the court to refuse same; and that also it was substantially submitted.

The motion is overruled.

WALTHALL, J., not participating.