## McCALL v. TEXAS DRAGLINE SERVICE CO., Inc.

### No. 11669.

Court of Civil Appeals of Texas. Galveston.
March 29, 1945.

Rehearing Denied May 31, 1945.

K. C. Barkley, Wm. L. Clary, and J. E. Aydt, all of Houston, for appellant.

Cole, Patterson, Cole & McDaniel, of Houston (Robert L. Cole, Sr., and Richard R. Cole, both of Houston, of counsel), for appellee.

MONTEITH, Chief Justice.

This action was brought by appellee, Texas Dragline Service Company, Inc., for the cancellation of five mortgages executed by appellee in favor of appellant, Sherwood P. McCall, doing business as McCall Tractor & Equipment Company, alleging the payment of the notes secured by the mortgages. Appellant answered admitting the payment of said notes, but alleged that the mortgages were also given to secure other indebtedness alleged to be due by appellee under a letter-agreement dated July 8, 1941, wherein appellee had obligated itself to pay appellant 7% of the gross amount of its bid on a drainage project at Camp Hulen, Texas, in the event it was awarded the contract for the construction of said project. Appellant sought recovery of this alleged indebtedness and foreclosure of his mortgage lien.

Appellee admitted the execution and delivery of said letter-agreement but alleged that the agreement was without consideration, for the reason that prior to the date of execution thereof appellant had obligated himself to become its indemnitor on both its bid and performance bonds to be given in connection with said drainage project in consideration of appellee's agreement to rent and buy from appellant such equipment as it might require on the project. Appellee alleged that it had carried out its part of said agreement and that appellant had later agreed to waive the 7% provision of said agreement.

In answer to special issues submitted, the jury found, on what we deem to be sufficient evidence, (1) that before appellee submitted its bid on the Mosquito Control Project, appellant had agreed with Elmer N. O'Haver (the secretary of appellee corporation) to join with appellee in indemnifying the American Employers Insurance Company in connection with the latter's execution of its bid and performance bonds on said project, in the event its bid on said contract was accepted, for no other consideration than that appellee would purchase from appellant all of the equipment and material it would require in its work; (2) that appellant did not advise appellee before the execution of the bid-bond on said project that he would require 7% of the gross amount of the contract involved as a consideration for his execution of the indemnity agreement to American Employers Insurance Company on the performance or contract bond executed; and (3) that, in August, 1941, after the execution of appellee's letter of July 8, 1941, appellant agreed with Elmer N. O'Haver to waive said 7% provision set out in said letter, for and in consideration of appellee's renting and purchasing from him all the equipment and material that might be required on said project.

Based on the answers to said special issues, judgment was rendered in favor of appellee cancelling said mortgages and that appellant take nothing by his cross-action.

The record shows that appellant, Sherwood P. McCall, joined appellee in the execution of its bid-bond which accompanied its bid on said drainage project. Appellee's bid was accepted on June 28, 1941, and on that date it was awarded a contract covering the work to be performed on said project.

Appellee began its work under said contract on July 3, 1941. On July 8, 1941, appellee was instructed by the United States Government to furnish its bond for the performance of said contract. McCall declined to join appellee in the execution of this bond until appellee executed the letter-agreement of July 8, 1941, which contained the following provision: "We further agree that in consideration of your indemnifying us in the bond above mentioned (the performance bond), we will pay you seven per cent on the gross amount of the contract and seven per cent of all extra work given us by the United States Government on the above contract." After the execution and delivery of the letter of July 8, 1941, McCall executed the indemnity agreement on appellee's performance-bond on said project.

The United States Government paid appellee the sum of $43,899.66 for work performed under its contract on the Mosquito Control Project. It is undisputed that appellee rented and purchased from appellant

the material and equipment used by it in connection with its work on said project.

■ Appellant contends that the oral agreement between himself and Elmer N. O'Haver, the secretary of appellee corporation, by the terms of which he is alleged to have agreed to execute the bid and performance bonds required of appellee in connection with said drainage project, in consideration of appellee's agreement to rent and buy from appellant all the material and equipment required on said job, was not a binding contract, for the reason that it was indefinite and vague in its terms and that it was not an agreement between appellee corporation and appellant, but an agreement by O'Haver, individually. This contention cannot, we think, be sustained under the facts in this case.

■ It is the general rule, established by the courts in this state, that when a third person deals with another who professes to act as the officer or agent of a corporation, he is generally estopped, as against the corporation, to deny the character or authority of such officer or agent and the validity of his acts thereunder. 19 Corpus Juris Secundum, Corporations, § 1013, page 486. This rule is particularly applicable where the corporation has subsequently ratified the transaction complained of. 13 Am.Jur., Corporations, page 929.

■ It is also the established rule in Texas that an agreement to furnish or deliver such articles or such an amount of personal property as the other party shall need, require or consume during a limited period of time, or for a particular enterprise, especially where the promisee, in terms, agrees to purchase from the promisor all of such property or articles as he may need, require or consume during the period referred to; is sufficiently definite and certain to bind the parties and is not unilateral. Tampa Shipbuilding & Engineering Co. v. General Construction Co., 5 Cir., 43 F.2d 309, 85 A.L.R. 1178; 10 Tex.Jur., page 63.

The oral agreement under consideration in the instant case required appellee to rent and purchase from appellant all the equipment and material it would require on said drainage project, in the event its proposed bid thereon was accepted, in consideration of appellant's agreement to join with appellee as an indemnitor in its bid and performance bonds on said project. As evidence of its ratification of said contract appellee did submit a bid on said project, appellant joining with it as an indemnitor on its bid bond and, relying upon appellant's agreement with O'Haver to join it in the execution of its performance bond, appellee began work on said project immediately after it was awarded the contract. Thereafter when appellee was instructed to furnish its performance bond, appellant declined to comply with his oral agreement to join in the execution thereof until appellee agreed in said letter-agreement to pay him 7% of the gross amount of the contract price on said project. Under these facts it is apparent that appellee had done everything possible up to the time of the execution of the letter-agreement to carry out its part of the oral agreement in order to put itself in position to purchase from appellant the material and equipment it might require on said project.

Appellant contends that the oral agreement between himself and O'Haver was either merged into, modified or rescinded by the letter-agreement of July 8, 1941, and that, having entered into said letter-agreement, appellee was bound thereby and was precluded from setting up a plea of want of consideration therein by virtue of the prior oral agreement between appellant and O'Haver.

In discussing the class of cases in which failure of consideration is ruled upon as a defense, Elliott on Contracts, Vol. 1, Section 215, page 366, announces the following general rule: "Neither the promise to do, nor the actual doing, of that which the promisor is, by law or subsisting contract, bound to do, is a sufficient consideration to support a promise made to the person upon whom the legal liability rests, either to induce him to perform what he is bound to do, or to make a promise so to do. For this reason if one does or promises to do that which the law requires of him, it is no consideration for a return promise."

Continuing the foregoing text in Section 216, at page 369, it is said: "And the same principle applies to contractual obligations in general where one party to a contract refuses to perform it unless promised some further pay or benefit than the contract provides for, and if the promise is made, it is without consideration and unenforceable for the reason that the party performing the contract in return for the promised additional compensation or benefit agrees to do nothing more than that which he was already bound to do. While this is un-

doubtedly the general rule, the courts have given it strict construction and have declared it inapplicable in many cases apparently within its provisions."

The Supreme Court of this state has followed the rule above announced in approving the opinion of the Commission of Appeals in the case of Barreda v. Craig, Thompson & Jeffries, 222 S.W. 177, 179, wherein the court, in passing upon the precise question here presented, in its opinion said: " * * * while the general right of modification may exist while the contract is executory on both sides, and the circumstances are such as to warrant the inference that the parties acted voluntarily, we think the great weight of authority, as well as the better reasoning, supports the view that such modifications will not be enforced, where the situation of the parties at the time of the modification is such as to negative the inference of voluntary action by the party surrendering his vested rights * * *," citing with approval the case of King v. Duluth Ry. Co., 61 Minn. 482, 63 N.W. 1105.

Continuing, the court said: "The doctrine of these cases as it is frequently applied does not commend itself either to our judgment or our sense of justice, for where the refusal to perform and the promise to pay extra compensation for performance of the contract are one transaction, and there are no exceptional circumstances making it equitable that an increased compensation should be demanded and paid, no amount of astute reasoning can change the plain fact that the party who refuses to perform, and thereby coerces a promise from the other party to the contract to pay him an increased compensation for doing that which he is legally bound to do, takes an unjustifiable advantage of the necessities of the other party. To hold, under such circumstances, that the party making the promise for extra compensation is presumed to have voluntarily elected to relinquish and abandon all his rights under the original contract, and to substitute therefor the new or modified agreement, is to wholly disregard the natural inference to be drawn from the transaction, and invite parties to repudiate their contract obligations whenever they can gain thereby. * * * Surely it would be a travesty on justice to hold that the party so making the promise for extra pay was estopped from asserting that the promise was without consideration. A party cannot lay the foundation

of an estoppel by his own wrong. If it be conceded that by the new promise the party obtains that which he could not compel, viz. a specific performance of the contract by the other party, still the fact remains that the one party has obtained thereby only that which he was legally entitled to receive, and the other party has done only that which he was legally bound to do. * * * but where the promise to the one is simply a repetition of a subsisting legal promise there can be no consideration for the promise of the other party, and there is no warrant for inferring that the parties have voluntarily rescinded or modified their contract."

In this case it is undisputed that the verbal agreement between appellant and O'Haver had been partially performed by both appellant and appellee at the time of the execution of said letter-agreement and, being no longer executory, it was not merged into said written agreement. It is also apparent from the record that appellant's obligation was the same under both the parol and the written agreements while appellee was obligated under the written agreement to pay appellant 7% of the gross contract price on said drainage project, an entirely new and different obligation from that contained in the prior oral agreement for which he was entitled to receive no corresponding benefit or advantage. It is, we think, clear from above facts that the written agreement of July 8, 1941, was not supported by a consideration.

Under his 14th point appellant assigns error in the failure of the trial court to grant a new trial based on the newly discovered evidence of the witness, H. E. Williams.

The affidavits of the witness Williams and appellant McCall are attached to appellant's motion for new trial. In his affidavit McCall states, in substance, that he began looking for the witness, H. E. Williams, who was a former stockholder and employee of appellee, Dragline Company, as soon as this suit was filed; that on Saturday, May 13, 1944 (the trial began on Monday, May 15, 1944), he learned that Williams was located in the State of New Jersey and that he put in a long distance telephone call for him in order to "ascertain what he knew about the facts," but that he was unable to get telephone connections with him until Tuesday or Wednesday of the following week after the case had gone to trial, and that, just as

he began to talk with Williams he was called to the witness stand and that he was not able during the trial to get Williams back on the telephone, although he made diligent efforts to do so. He stated that after the trial of the case he completed a long distance call to Williams in New Jersey, at which time Williams detailed to him his recollection of the facts in connection with the case; that, prior to talking to Williams by long distance telephone, he did not know what Williams would testify to. McCall testified that, though he knew the whereabouts of Williams on Saturday before the trial commenced on Monday, he did not make an affidavit for continuance on the grounds of the absence of a material witness, or for time to take his deposition, and that he did not ask the court for leave to withdraw his announcement of ready when he was unable to complete his telephone conversation with Williams during the trial of the case.

The affidavit of H. E. Williams shows that Williams' testimony would have supported McCall's testimony that, prior to the execution of the bid bond on said drainage project, McCall had stated to him and O'Haver that he would be willing to execute the bid and performance bonds in connection with said drainage project for 7% of the gross amount of the contract price and that McCall did not agree to indemnify the insurance company in consideration of appellee's agreement to buy and rent the equipment it would need on the job from him. This statement is a direct contradiction of the testimony given by O'Haver on the trial.

In 31 Texas Jurisprudence, Sections 81 and 82, at pages 90, 91 and 92, it is said:

"One of the commonest grounds on which new trials are applied for is newly discovered evidence, but applications based on this ground are not favored. 'Such motions', says the Supreme Court, 'are received with careful scrutiny, and are held to address themselves very much to the discretion of the court; and where the court has refused an application made upon this ground, the appellant court will not reverse, unless it shall appear that the court below has not exercised its discretion according to the established rules of law.'

"When application is made for a new trial on the ground of newly discovered evidence, it is necessary that the applicant show that knowledge of the existence of the new evidence was acquired subsequent to the former trial, and that it was not owing to want of diligence that such evidence was not discovered and obtained in time to be used when the case was tried; that the new evidence is material, and not merely cumulative, and that, if admitted, it would probably change the result upon another trial. The burden is upon the movant to establish each of these facts, and, if he does so, a new trial should be awarded as a matter of right, and a refusal thereof constitutes reversible error.

"Nothing is better settled in the law of new trials than the rule that the granting or refusal of a new trial for newly discovered evidence rests within the sound discretion of the trial court, and that unless such discretion has been abused the court's ruling will not be disturbed on appeal."

In 31 Texas Jurisprudence, Section 86, page 100, it is said that: "Nor is it a ground for a new trial that, for the first time, after trial, a party was informed that witnesses of whose existence he was unaware, were willing to testify in his favor."

In the case of Allen et al. v. Texas & N. O. R. R. Co., Tex.Civ.App., 70 S.W.2d 758, application for writ of error dismissed, it is held that the probative force of newly discovered evidence and its probable effect upon another trial are primarily matters for consideration and determination by the trial court, and that the court, having heard the whole trial, was necessarily acquainted with all the facts of the case and in a better position than anyone else to pass upon such issues, that he in that connection may take into consideration all the legal requirements for the granting of a new trial in such case and measure the new evidence offered thereby. The court held that the granting or refusing of a motion for new trial on the ground of newly discovered evidence is therefore generally regarded as a matter resting within the discretion of the trial court, and that his action will not be disturbed except when such discretion is abused, citing Peters v. Williams, Tex.Civ.App., 271 S.W. 430, and authorities there cited; Wright v. Stone, Tex.Civ.App., 273 S.W. 937, and authorities there cited; Kelsey v. Myers, Tex.Civ. App., 29 S.W.2d 855; 3 Tex.Jur., page 1085, and authorities cited in note 11.

The record in the instant case shows that appellant knew the witness, H. E. Williams, knew something about the case, irrespective

of whether he knew that Williams' testimony would be in his favor or not. Without having definite information as to Williams' whereabouts for the purpose of securing his deposition, or his presence at the trial of the case, appellant apparently sought an early trial and made no application for a continuance when the case was called for trial on the ground that he was unable to secure Williams' testimony. It is undisputed that druing the trial he located Williams, but since he did not know what his testimony on the trial would be, he did not move for a continuance or for leave to withdraw his announcement of ready.

In the case of Peterson v. Clay, Tex.Civ. App., 225 S.W. 1112, 1115, no writ .applied for, the court in its opinion said:

"The appellants did not show sufficient diligence to procure the evidence referred to * * * as newly discovered evidence. The materiality of this evidence, if it is material, and its existence, became known to the defendants before the close of the trial. They should have promptly asked for a continuance or a postponement in order to secure such evidence."

In the case of De Hoyos v. G., H. & S. A. Ry. Co., 52 Tex.Civ.App. 543, 115 S.W. 75, 76, writ refused, the court said:

"Appellant therefore became informed during the trial of the fact that Norris probably knew something of this occurrence, and, if it really occurred as plaintiff claimed, the probability was that, if he knew anything about it, his testimony would be favorable to plaintiff. In these circumstances, plaintiff would not have been justified in going on and submitting the case to the jury, without having made some proper effort to have Norris as a witness, and afterwards, on finding that Norris' testimony was in fact favorable, to ask for a new trial. * * * If plaintiff really wanted Norris as a witness, or wanted a fair opportunity to locate him and to find out what he knew, he should, when it was apparent that he was not immediately to be found and the trial nearing the end, have endeavored to have the case postponed in some way in order to afford him a reasonable opportunity to do so. * * * As it is, appellant may be said to have wanted Norris as a witness at this trial and to have him there, if he could find him, but, failing to do so, was nevertheless willing, with the testimony he had, to go on with the case and take a chance of a favorable verdict. We think there was no error in refusing the new trial."

 The following cases hold that motions for new trial on grounds of newly discovered evidence are addressed to the sound discretion of the trial court, which will not be disturbed unless it appears that there has been an abuse of discretion: Snow v. Harding, Tex.Civ.App., 180 S.W. 2d 965; Courreges v. System Freight Service, Tex.Civ.App., 152 S.W.2d 841; Blaugrund v. Gish, Tex.Civ.App., 179 S.W.2d 257, affirmed Tex.Sup., 179 S.W.2d 266; Texas Employer's Ins. Ass'n v. Moser, Tex. Civ.App., 152 S.W.2d 390.

Under the facts in this case, we cannot say that the trial court abused his discretion in refusing appellant's motion for new trial on the grounds of newly discovered evidence.

We have carefully considered all points presented by appellant in his brief, and, finding no error in the record which requires a reversal, the judgment of the trial court will be in all things affirmed.

Affirmed.