**CAVROK PRODUCTS COMPANY**
vs.
**DACOR INCORPORATED**

District Court Department
Appellate Division, Western District
Trial Court of the
Commonwealth of Massachusetts

**November 18, 1980**

Steven A. Kressler for the plaintiff
Richard J. Sarapas for the defendant.

Present: Walsh, P.J., Larkin, J., Cimini, J.*

LARKIN, J. Cavrok Products Co. (hereinafter Cavrok) brought an action in contract against Dacor Incorporated (hereinafter Dacor) to recover the balance due on an account for merchandise which it sold to Dacor.

The record indicates that on September 21, 1973, Cavrok and Dacor executed an agreement for the purchase of an "injection mold", designed to produce simulated brick tiles, together with Cavrok's "complete inventory" of allied and ancillary supplies and materials. Cavrok also gave Dacor the right to the exclusive supplying and servicing of three of Cavrok's largest customers. A detailed payment schedule was set forth in the contract. The parties undertook an ongoing business relationship under the terms of the basic agreement as supplement by a "series of oral agreements." In 1975 Dacor attempted to "terminate" its relationship with CAVROK. At the time that it sought this "termination" it owed Cavrok some $11,000.00 (later reduced to $7,000.00) by a credit payment for merchandise already sold and delivered. Cavrok's attempt to recover this balance owed to it is the subject matter of this suit.

The sole issue on appeal revolves around the interpretation of certain language which was contained in the basic written agreement executed by the parties. The language, in pertinent part, states that:

"In the event that Dacor fails to make payment in full or fails to make payments according to the above schedule, all rights of Dacor terminate and Cavrok shall have no further obligations under this contract."

Dacor argues that the above language gave it the unilateral right to "terminate" the contract by the simple expedient of failing to pay for goods already contracted for and delivered. It seeks support for this novel (and, at least to Cavrok, rather surprising argument) by emphasizing distinctions drawn from the words "termination" and "cancellation" under G.L. c. 106 (the Uniform Commercial Code), secs. 2-106(3) and 2-106(4). Although the argument is creative and ably made, and might have relevance on mitigation of damages if Dacor had been given a true right to terminate

within the contract, we, like the District Court, believe that the argument is without merit as there has been no such right expressed in the contract.

We start with the proposition that, frequently, words used in a sales contract do not admit of abstract legal definition and their meaning and effect must be determined with reference to the subject matter of the particular sale, the character of business in which one or both of the parties was engaged and other circumstances peculiar to the individual case and context. **Tampa Shipbuilding and Engineering Co. v. General Construction Co., 43 F. 2d 309 (1956)**[1] Words used in a contract will be given their ordinary meaning where nothing appears to show that they were used in a different sense, or in a technical sense, and where no unreasonable or absurd consequences will result for such interpretation. **Farber v. Mutual Life Ins. Co., 250 Mass. 250, (1924).** Words used in a contract with an established or precise legal meaning and effect will ordinarily be interpreted as usually understood by persons in the profession or business to which they relate. **Beneficial Fire and Casualty Ins. Co. v. Kurt Kitke Co., 46 Cal.2d 517, 297 P.2d 428 (1958).** Finally, language which is susceptible of more than one meaning will ordinarily be interpreted, if possible, by the sense in which such words were used by the parties. **Courtright v. Scrimger, 40 Ohio St. 547 (1938).** Obviously, the interpretation of language can be critical to the issue of whether or not a breach of a sales contract has taken place.

Again, the issue here is whether or not Dacor had the unilateral and unfettered right to end its obligation under the agreement by simply failing to make payments. In effect, what Dacor here is asking that the contractual clause which reads "In the event that Dacor fails to make payment in full or fails to make payments according to the above schedule, all rights of Dacor

---

[1] Or as Justice Holmes has written, "A word is not a crystal, transparent and unchanged, it is the skin of a living thought, and may vary greatly in color and context according to the circumstances and time in which it is used" Towne v. Eisner, 245 U.S. 418, 425 (1918).

terminate and Cavrok shall have no further obligations under this contract", to instead read, "In the event that Dacor fails to make payment in full or fails to make payments according to the above schedule, all **rights** and **obligations** of Dacor terminate and Cavrok shall have no further **obligations** under this contract." But, as we read the agreement, in its fair intendment, Cavrok did not contract to give Dacor the unilateral right to terminate its contractual **obligations** under the agreement. What Dacor seeks is for the court to imply this contractual right. And, in our view, there simply is no language within the contract or its context which would compel such a result. What we have here, simply, is a purchase and sale agreement with clearly delineated obligations on the purchaser regarding those items purchased and a payments schedule which had to be comported with in the process. There is no unilateral right on behalf of Dacor to simply terminate its obligations by the novel device of refusing to pay for merchandise already sold and delivered.

The touchstone here is the need to give the determinative language its "plain and ordinary meaning." Since the operative phrase is that for non-payment "all rights of Dacor terminate", it is useful to review the calculus of rights which Dacor had been given at the time of the execution of the agreement. These included the rights:

(1) to acquire title to a sophisticated and complex mold together with its allied and supporting materials;

(2) the right to fill supply orders which Cavrok had already obtained;

(3) the right to service and supply Cavrok's then three largest customers;

(4) the right to the continuous use of the mold and materials while paying Cavrok according to the precisely delineated payments schedule.

In short, these were the rights which Dacor had under the agreement so long as it discharged the **obligation** of making payments in timely fashion. When it ceased making the payment then, of course, its rights ceased. But it is not an exercise of semantics to suggest that this involves a **termination of rights and not a right of termination.**

In conclusion, then we believe the language involved, when given its plain and ordinary meaning, and taken in the context of the entire agreement can have only one reasonable interpretation. That is, when Cavrok addressed the contingency of non-payment, it simply intended to void all residual rights which Dacor may have had on the agreement, not to exculpate it from payment for goods already received. To adopt Dacor's interpretation that Cavrok, by this same language, intended to give Dacor the right to terminate at any time upon mere non-payment of one of the installments, regardless of goods already sold and delivered, is simply not warranted on this record.

Finding no error on the record, we find that the report should be dismissed.

So ordered.
William T. Walsh, J.
Larkin, J.